When you're ready. Thank you, Your Honor. Good morning. May it please the court. My name is Peter Wolf. I'm the federal defender representing Ms. Kapahu in this case. We have a bunch of issues, but I think I want to start with the one that the district court decided that actually we hadn't really raised below, which has to do with the so-called Terry stop. And so in the court below, we had pursued the search issue as a lack of consent. And when the district court ruled on that issue, she said that she hesitated to find consent, but then justified what had happened, saying it was a valid brief investigatory detention supported by reasonable suspicion. And she purported to do that without deciding the issue of consent, which really I think is probably the wrong way to look at it, because on the issue of consent, the government had the burden, and the district court said that she hesitated to find consent, which basically means she didn't find consent. And so, but turning to the Terry issue, the question is whether plain error, the first question is whether plain error applies, and our submission is it does not apply. And the reason is there's no, the purpose of the plain error rule isn't served by applying it in this case. The plain error rule, I take it, is to give the district judge a first chance to get the issue right. And so even though neither side raised this in the court below, the district court directly addressed it. Okay, so assume that we're not applying plain error. Okay. Tell us why there wasn't, at the time the purse was searched, reasonable suspicion. In other words, when the purse was searched, there was reasonable suspicion. Okay, so your reasonable suspicion argument, it seems to me, fails unless one of your predicate arguments works, correct? Well, I think that's not accurate, Your Honor. Well, at that point, she's already told the police or the officers that there's contraband in her purse. Right. So surely at that point, they have at least reasonable suspicion. But there's no question about that. So it seems to me that your reasonable suspicion argument is predicated on some prior error in the police procedure. Well, so my reasonable suspicion argument is that at an earlier point in time, chronologically, that the thing had ripened into a Terry stop unsupported by reasonable suspicion. Okay, so your argument is that the stop occurred prior to the time. While she's still in the line, because here's what we have. So Agent Jones and the other agent approach her. She's in the line, and I think we diagrammed this in our reply brief. So she's in the line to get on the plane. There's people in front of her. As Agent Jones and Keniho approach her, I think Jones says, other passengers filter. I don't know what that word means. But anyway, they get in line behind her, as seems to be the plain meaning. And then on her left, there's a window wall, and looking out on the tarmac where the airplanes are. And so Jones confronts her at his 3 o'clock to her, so at her side, on her right side. Keniho is behind her, and he displays his badge. And all he has at that point is a tip that it seems like everyone agrees. Well, are you saying that itself is a terrorist stop? Not quite. Not yet, okay. Not yet, but soon. And so he tells her, he displays his badge, he identifies himself, he tells her she's free to leave. Although it's not even clear what could that actually mean in this context. She's about to board the plane. Well, she's free not to get on the plane. That may be a terrible economic decision on her part. There's nobody behind her saying you're compelled to get on the plane, is there? There's not. But it is difficult to tell what that means. In other words, they use their stock language, which was inappropriate in the situation. I think so. I think so, because what does it mean? They know she's from Kauai. They know she's getting on the plane to go to Kauai. And telling her she's free to leave. So we don't know what it means, but that doesn't give rise to a stop, does it? Not yet. So he asks for her boarding pass identification, and she provides those. By the way, does the record indicate is the line still moving forward at this point, or has she stepped out of it? Or is the line just frozen? It's not clear, actually. At least as I read the record, and maybe I'm wrong, they're waiting to board. That is to say that the line is not moving. They line up. I think that is the better reading of it, but it's not 100% clear. I think no one says that the line was moving forward and she was pulled out of the line. And apparently not a Southwest flight, so they're not all standing next to a number. You know, Hawaiian used to be like that, but now they give you an assigned seat. But they still line up. So they ask for her boarding pass. Right. And she shows it, and they hand it back. And then, so he asks a few innocuous questions. Well, she shows him her hotel key. Yeah, which, you know, it's an electronic key. And so then he hands it back, and she shows the identification, he hands that back. And so then he asks her. So he asks a few innocuous questions, but then he launches into the incriminating questions. Are you carrying anything back for anybody on Kauai? No. Are you carrying anything back? No. Are you carrying drugs? There's no doubt that these are incriminating questions. The question is whether she's in custody, if you will, or being detained. I don't think so. Not yet. We're getting there. Okay. It's close. Okay. You can answer. Okay. Tell me what, give us the set of facts that leads up to her being detained. So the next thing she does is he asks for consent to search her purse to make sure she didn't have any drugs. And she says, don't you need a warrant for that? He says, I'm just asking. And then he told her that she could refuse. She did refuse. He said, I'd rather you didn't. So the next thing that happens is he cycles through his kind of monologue. And he says, I explained to her, this is a quote from his testimony, that I understood that I don't like people going through my things also so I can understand her hesitancy. And then at that point in time, at that point I was, at that time I was dressed in a T-shirt. It might have been a tank top, I don't remember. Shorts and slippers. And it was a little after 9 o'clock at night and so I asked her, do you think that we walk around in the airport like this and just randomly come up and talk to people? And at that point I stated that I already knew that she had drugs and that I needed her help to be able to catch the people she got the drugs from and the people in Kauai where the drug, where they were going to. She responded, I want to go home. By this point, this has ripened into a Terry stop. But at this point it's also not supported by reasonable suspicion because the only thing that Agent Jones has is a tip, which even he said was the lowest form of tip. But did he prevent her? Did he prevent her from going home at that point? Going home was getting on the airplane. Right. He didn't honor the request. He ignored it. I'm not sure what request there is. She says, I want to go home. She's in line to go home. Did he pull her out of the line? No. So what happens once she says, I want to go home? He then says, he ignores her and he immediately asks her where the drugs are. And she responds, in the purse. And at that point we all agree he has reasonable suspicion. Right. So the question is, why was her freedom restrained in any way except by the airline up to that point? Because she's being hemmed in. She's being accused of a crime. She's being asked to consent, which she doesn't consent. And he's doing all this and clearly no reasonable person, particularly in this day and age, would think that she was free to ignore Agent Jones's. Does the location make sense? By that time, did she know that the second officer was behind her? You know, at the 5 o'clock position or something like that? It's not 100% clear what she knew. Jones was doing the talking. I mean, if you just have normal personal vision, you'd realize. Tell me again, exactly at what point did this become a terrorist stop? At the point where he's telling her, I already know that you have drugs, at that point. He says, I already know that you have drugs. And that's not true. But that's a direct confrontation and that is one of the factors that. Now, what is your point? Is your point that her, I'll say admission, right, about carrying drugs in her purse, is like a direct response to that? No, no, this happened beforehand. Before there's any direct admission, he accuses her of, he says, I know you have drugs. So it's his accusation at that point that turns it into a terrorist stop? I think that's right. And if you look at, so we've cited a bunch of cases in our brief in Kerr, which we discussed in our opening brief at 22, an approach from behind blocking egress and conveying the defendant was a target, that constituted a terrorist attack. And see, what I'm trying to find here and why those cases are not entirely helpful is something that restricted her movement. Or she would have led a reasonable person to believe that her movement was restricted. I don't think any reasonable person in the United States in this day and age thinks that when you're directly accused of criminal activity, you can just respond to the officer with, you know, more or less, I'm going home. Up to then she said, I'm going home. I want to go home. I'm getting on the airplane. So I'm having trouble finding a case where the officer's statement that doesn't have to do with restraint, but has to do with his belief that you've committed a crime, turns what wasn't a terrorist stop up until that point into one. Well, I think that the Harris decision we discussed in our opening brief at 22 concluded that a consensual encounter ripened in a terrorist detention when an officer conveyed, called the defendant a suspect. Now, if I remember that case correctly, the officer on the radio called the defendant a suspect. But there shouldn't be any real difference between you're the person, you're a citizen, and you hear the officer say on the radio, you know, I'm talking to a suspect. What we have here is you have a citizen who is directly accused, who's already denied various things, and that is directly accused by Agent Jones, who has no reason to believe this is true. I know you're carrying drugs. He has some reason, but as he admits, it's not much of a reason. Right. It's not enough to constitute reasonable suspicion under Terry. And so you have that direct accusation. Who thinks that when that happens you can just walk away from the guy? So your point is then, if we go with you, that at that point, being accused of a crime and being somewhat confined, that what, she was in sort of like detention, not free to leave? Right. And so what you said afterwards was not admissible because why? Because at the point when the thing became— Because you violated Terry v. Ohio? Right. At the point where it became a Terry stop, it wasn't supported by reasonable suspicion. It was shortly after that. Part of my problem is that all this jurisprudence that we have about whether a reasonable person would feel free to leave and therefore is it or is it not a custodial situation, it's fantasy land. I mean, reasonable people in the circumstances we have held, they would feel free to leave. Most reasonable people would not at all feel they're free to leave. So, I mean, I'm already off into some sort of legal world that pretends to be the world of reasonable, ordinary people, but it's not. So I've got to deal with my cases, not with what a reasonable person would do. And it seems to me that the people who actually do feel free to leave are the hardened criminals who have been through this before who know that when he says you'll feel free to leave, that, okay, I'm leaving. But ordinary people, so I take it that you're right as to what a reasonable person would or would not do. This is a tricky case because she's in a situation where she's already, for reasons quite independent of the police, not free to leave because she's waiting to take an airplane. If she leaves, she doesn't take the airplane. Right. What does that do to the case? Well, I think it's an important factor because Agent Jones, I mean, he only works at the airport, if you believe his testimony. I mean, well, a couple of years in his 18 years, he worked downtown, which I mean to take it in Honolulu. But all the rest of his time, his whole job is interdiction at the airport. And he's exploiting the obvious thing that he knows, that everybody knows, when it's time to get on the airplane, you have to get on the airplane or you're not going to get on the airplane. The other thing that we didn't brief and is not really legally relevant is there's a reason why these cases are in federal court all the time as opposed to state court. And the reason is this. Over a decade ago, the Hawaii Supreme Court said, these aren't consensual encounters unless you tell the person that they are free to leave, that they don't have to answer any questions, they don't have to do anything. And so that resulted in all these interdiction cases being federal cases. And, you know, it's neither here nor there. But the facts of this case. Although in this case, the officers seem to have complied with whatever the Hawaii Supreme Court requires, at least formally. They said you're free to leave, you don't have to consent. They may not have given the exact Hawaii 5-0 invocation, but they came pretty close, didn't they? Right. But the point where he accuses her with no reasonable suspicion, he says, I know you are carrying drugs. I mean, I think that's a ploy. It's probably been successful for him in the past. It was successful in this case. But that's not reasonable suspicion. And if everything beyond that point is tainted by that illegality, then. But if that was permissible, that is to say, if we rule against you at that point in time, do you lose the rest of it? I don't think so. I kind of think so, but tell me why. Well, so we have the issue of the search incident to arrest. And the problem is that that's another issue in which the government has the burden. And although this court's cases say that the exact timing doesn't matter, the search could take place right before the arrest, it's pretty clear that the arrest actually takes place at a different location in their office at the airport after Kapahu has been moved there, and that the search took place while she was out of the line but seated in the area near where the line was. And so we think that that's not a search incident to arrest because it's removed from the place. Removed from the place of the arrest? Right. Okay. Why don't we have them on the other side? We've taken you over time, but we'll give you a chance to respond. Good morning, Your Honors. May it please the Court, Mark Wallenstein from the United States. Your Honors, this was at worst a five-minute stop that became a Terry stop with the last question supported by reasonable suspicion. The defendant was twice warned in a five-minute period that she was free to leave. When did it become a Terry stop? So I don't believe it was a Terry stop at all, but let's take the defense position at face value, that it became a Terry stop. When the officer said, I know you have drugs. Okay. So let's just take that as a hypothesis. At that point, it's a Terry stop. I don't believe it is a Terry stop, Your Honor. I think that she remains free. So my reading of all the cases the defense cites, there is not a single case with a stop this short, a five-minute stop, where the defendant is twice warned. She's initially said she's not under arrest, she's not in trouble, she's free to leave, and then within two minutes she's again warned, this encounter is consensual, you can agree to or disagree to a search of your person. That is two warnings in five minutes. That in tandem with the fact that there is a tip directing the officers to this person, it might not be the most reliable form of tip, but there is no evidence that the tipper is unreliable. I'm trying to take your assumption on it. I understand you don't think that's, but you said at worst this was a Terry stop after the officer accused her. Let's take the worst case. Okay, so if that worst case occurred, did he have reasonable suspicion at that point? He absolutely did. Here is the evidence of reasonable suspicion at that moment, Your Honor. There's the tip. The defense brief makes it seem like the tipper is unreliable or that the police have some knowledge that they're generally not reliable. That is not what the record reflects. This is simply a new person. The record is consistent with this being a fresh tip that they've just never worked with this person before. Not enough on its own to give? Not enough on its own to trigger reasonable suspicion, but certainly enough to allow you to walk up to the person and ask them, may we ask you some questions? And that's what they did. They asked permission to ask questions. In response, she says, sure. She consents to the encounter. That gives rise to reasonable suspicion? That doesn't give rise to reasonable suspicion, but it's a brick in the wall. She is nervous. It's a brick out of the wall. She's nervous, Your Honor, when she hands over. What I want to know is what facts give rise to reasonable suspicion. Surely not the fact that she's willing to talk to me. No, no, no. She seems nervous. She hands over her hotel key instead of her room key. She can't answer simple questions. So you're nervous. You mean instead of her ID. You said she hands over her hotel key in lieu of her room key. I'm sorry. She handed over her hotel key in lieu of her ID. Are you carrying drugs? Nervousness is betraying someone. I plead the Fifth, Your Honor. So she hands over her hotel key instead of her room key. She can't remember the name of the hotel she stayed in the night before. That's actually what Agent Jones explained on the record. The agents are trained to do. They ask simple questions, and when people have trouble answering those simple questions, that gives them suspicion. And the standard is the court has to defer to the instincts and expertise of the agents in making those very fine judgments. In addition to not recalling the hotel name, she's in town for one night, and then she puts her head in her hands and says, I want to go home. The standard is a reasonable, innocent person. The moment she puts her head in her hands and says,  That's her digesting the gravity of the crime that she knows she's been caught in. She knows she's got drugs, and she's probably weighing, should I cooperate or not? This is overwhelming. This is serious. That signals to him, that absolutely gives him reasonable suspicion, at least to ask a follow-up question at that point. Her reaction had been... Just stop for a second. We're not worried about whether or not his follow-up question is appropriate or inappropriate. For reasons that I disagree with, the prevailing law is that police may lie to suspects. So the question is whether at that point he has reasonable suspicion that would justify a Terry stop, whether or not he asks the next question or not. And I take it your position is that this confluence of factors is enough to meet the fairly slim burden that Terry puts on us. It absolutely is, Your Honor. And that it doesn't matter that he then lied to her with the next question. It absolutely does not matter. Ruses are permissible under the law, and I understand that Your Honors might not agree with the policy rationales underlying that law, but that is the law. Well, luckily for the government side, we have a whole series of fictions here about... And we have to follow the case law. But I'm just trying to figure out a point in time when you think there was... You have a tip that this person's carrying drugs. They do not unequivocally deny anything. All her answers are equivocal. She says, I'd rather you didn't after a long pause. She says, don't you need a warrant for that? She's clearly thinking about what to do. Let me ask you a related question, because you started off by saying we don't agree that there was a Terry stop at any point until after she confessed. Yes, Your Honor. If, in fact, the Terry stop was not until some point later after she confessed, surely at that point there was reasonable suspicion. Why do you get to search the purse at that point? Why not just take the purse away? She's told you there's drugs in the purse. Why do you need to search it? Why not just take it away?  The first answer is, actually, as a matter of law, at the moment of the confession, if her Fourth Amendment rights have not been violated up until that point, which is the question, I think, the only question, actually, that Your Honors really need to answer, if her Fourth Amendment rights have not been violated at that point, by saying there are drugs in my purse, she gives them reasonable suspicion, but not only that, she gives them probable cause to arrest her and probable cause to search her incident to that arrest. The timing of the arrest is irrelevant. I believe that the arrest happened when they... So they moved her to a side area, and then they moved her... I agree. My question is one about searching incident to arrest. I mean, surely you have the ability to look in her pockets to make sure she can't destroy stuff or have a gun, but she's got a closed purse. Why not just take it? Why do you have to search it at that point? Why not preserve it and get a warrant to search it? I see. You mean... One of the various values... In other words, we allow search incidents to arrest because we're worried that a defendant either might have something that might harm a police officer or might destroy evidence. Are either of those circumstances present? So I think that the actual reason why they looked in the purse is they almost had her signed up to cooperate at that point, and had she cooperated, had she made some phone calls because there was other drug deals she knew about, she would have walked that night. She would not have been arrested. So you have to look and see if there are actually drugs in the purse in the context of what actually happened afterwards, which is she seems like she's going to get signed up. It's only after she gets to the DEA office at a different location that she decides not to cooperate. So that's why they looked in the purse. I don't get it. Well, you have to see if there are actually drugs in the purse before you can sign up to cooperate. Why is that? Because you have to know if you have leverage against them or not. But this takes us well outside any rationale for a search incident to arrest. You're trying to get leverage to get somebody to cooperate. But I'm just answering the question, why did they? So now let's go back to the law, right? So why was it legal for them to do so? I see. So the reason they do it can be independent of the reasons that we use to justify it. Both of them come into play. So as a matter of law, there's probable cause to arrest her. The law is the arrest can take place after the search incident to arrest. That is clear as long as it's contemporaneous. I submit that it absolutely was contemporaneous. She's arrested when her freedom of liberty is restrained, when she's cuffed and taken from the side area to the DEA office at another location in the airport. I don't think you ever addressed when this became a Terry stop, did you? So I believe it became a Terry stop when she confessed. When she said, I've got drugs in my purse. It's not a Terry stop. That's a probable cause. Correct. Right. I don't think there ever was a Terry stop. I think it was a consensual encounter up until the point she confessed. I understand Your Honors might not agree with that, but I don't have a problem taking the defense facts at face value. I don't know if I agree, but here's my problem. I think one of my colleagues raised it earlier, maybe with Mr. Wolf, but this kind of airport roving patrol that's very common and lots of, we'll call it, destination and origin cities, you get somebody in a boarding line, and in a sense, they can't move anyway. So you go up there and you say, well, you can leave whenever you want to, but you know they can't leave, and that's the reason you talk to them there because you know they're stuck, you meaning the DEA agent or whoever it is. And so are there any cases that address what it means to tell a person in that situation you're free to leave? Respectfully, Your Honor. In terms of consent or lack of detention? Respectfully, Your Honor, she absolutely could leave. She could walk away. I don't know if she could leave and what? And then lose her place in line and lose boarding the plane? She had said to Agent Jones, I don't want to talk to you anymore. Please leave. I want to get on the plane. He would have walked away. No, but he didn't say, you see, he didn't say, you know, if you don't want to talk to me, I'll leave. He said if you don't want to talk to me, you're free to leave. Right? That's the reverse. My reading of that, you're free to leave at any time, is you can stand in line and board the plane. No, no. Or you can walk out the front door. Just a minute. It also means that if you say so, I'll leave. So you tell the person in line, okay, if you don't want to talk to me, tell me to leave and I'll leave. They never say that, and you know that. No, he didn't say that, but that's – I was standing in that line and Agent Jones walked up to me. Well, you're an AUSA, but let's take the ordinary person. Let's just take the counterfactual that I'm a reasonable person. Well, go ahead. So Agent Jones walks up in line, and he says – this is the quote. He says, you are not under arrest, you are not in trouble, and you are free to leave at any time. About two minutes later, he says, I'm just asking. This encounter is consensual. It's up to you. You can agree or disagree. If you look at the cases that have been cited by the parties, all of them involve stops that are 45 minutes, an hour, there's one that's a half an hour, one that's an hour and a half. These warnings happen within a very short period of time, and her confession comes at the five-minute mark. It's an eight minutes total, but it's at the five-minute mark. But I want to come back and stay with Judge Tashima's point. This is not a you are free to leave, she's out on the sidewalk, she's been walking to the store, she can keep walking. She is in line for a purpose. She's going to stay there because she needs to get onto the airplane. She is not going to leave, and the agent knows it. He says you're free to leave, but he knows she's not going to leave. She's exactly where she wants to be. She's in line. She's not moving. She's waiting to board the plane. Please don't interrupt. I'm sorry. She's exactly where she wants to be, and she's not going to leave. He knows she's not going to leave. What he doesn't say, which in the other circumstance doesn't really need to be said because the person really is free to leave, what he doesn't say is, and if you won't want to talk to me, you can tell me to leave. He doesn't say that. He does not say that. The law does not require him to respectfully. Well, I wonder because this is… I have to ask about the cases. Do the cases address this kind of situation when the person is in that kind of limited circumstances and say, no, then you have to tell them I'll leave. There are no cases on that. I don't believe that they do, but what the cases the defense is citing don't have is a warning like the one in this case. The vast majority of the cases that the defense cites, there's no warning at all. Your Honor, if I could briefly discuss the standard of review. The government… Let me ask you. The district court finds what with respect to when this defendant was detained? The district court found that if there was a detention, the district court did not reach the detention issue. Right. And it found if there was a detention, there was reasonable suspicion. Okay. And the district court said if there was a detention, there was reasonable suspicion at what point? At least by the moment before the confession. We defer to the district court about issues of when somebody is in custody, but do we defer to the district court about whether a set of facts amounts to reasonable suspicion? No, unless the other side doesn't raise the issue below, and here's why that matters, Your Honor. The government would have elicited more facts regarding the detention and reasonable suspicion up until this point in the stop if the defense had raised that issue below. The defense's point is that the court did this sua sponte. Did your side argue that there was reasonable suspicion at some point? I don't believe so, but I don't remember. It's sort of hard to allocate burdens in this case. There is another rationale behind the plain error standard other than the one the defense is saying. It is incentivizing the parties to bring their arguments by penalizing them if they don't where the record would have been clearer. Here are the things that we would have put into the record had the defense raised this issue below. Is there actually someone standing behind her? Did she have room to step past the person in front of her? I take your point that you never had an opportunity to develop the record. What's making it more difficult for me is that the other side, your argument was this was a search into a valid arrest. Yes, Your Honor. And she wasn't detained. And we're not arguing. And so the judge said, well, I think it was. But I also think, even though nobody raises it, that there was reasonable suspicion earlier. And it's difficult under those circumstances to say the defense had the burden to raise that issue and to allow a full development of the record when it wasn't the issue either side was arguing. The defense can't take advantage of that argument they didn't raise now. The standard of review should be plain error. The reason for that is the plain error rule exists to incentivize parties to bring their best arguments first so that a full record can be developed. Was the hotel room name on the key? Exactly how much time elapsed? I talked to Agent Jones. It wasn't even five minutes. It was three minutes. Whether boarding had actually started or not. Think about how many times he said the record's not 100% clear on critical facts that you asked him. I counted four times he said that. Each one of those is a reason why you review the detention issue at least, which the district court did not reach, for plain error only. And I submit there's no plain error in this case. And there's no error whatsoever, regardless of the standard of review. But if there is a case to apply plain error review on, it's this one. Mr. Wolfe's public defender shop is Mr. Wolfe and Selina Althoff, the trial defense counsel, some of the finest defense attorneys in Hawaii. I would have them represent me or a family member if I were ever in trouble with the law. They chose not to pursue this argument. I agree with you. And you're from a fine office, too. But I'm not sure how that makes us decide a case. We have to decide a case based on the facts in the record. One of the reasons to apply a different standard of review is if they intentionally relinquish an argument. I am sure that Selina Althoff thought about whether to bring this argument or not and brought a different argument instead. And they can't now take advantage of it on appeal on a de novo standard of review, having deprived me of the opportunity to make a record which would have disproven the detention and reasonable suspicion inquiry anyway. They can't use it as both a shield and a sword, Your Honor. I see I'm over my time. Got it. Thank you. Could you put a minute on the clock, please? In the district court, nobody was talking about reasonable suspicion or a Terry Stopp. It was Judge Balway who raised that in a written order. The whole issue was litigated as a question on the search issue as consensual or not. So the point of your colleague, and it's not a terrible one, is this, that had you raised the notion that your client was detained earlier and, therefore, everything that followed from it was tainted, they would have made a different record. But since you only raised the issue of consent, they didn't make that record. Nobody raised the issue of consent the first time anybody has heard of it. It's your burden to demonstrate the illegality of the search, correct? Right. It's the government's burden, though, to prove consent. And so we raised consent. So you raised an issue that the government had a burden of proof on, but you didn't raise another issue on which you had a burden of proof on. Nobody raised that issue. I think the government's problem is, gee, had we only known, we could have made a better record, and, therefore, your failure to do so, well, shouldn't be held against them. Except that they could have. They won the case below. They could have said when Judge Balway's order came out, you know what, this is the first time anyone's talking about Terry. We want to go back and further develop the record. Yeah, uh-huh. Unlikely. Yeah, it's unlikely. No, nobody would have done that. I mean, they won. They're going to go up on appeal. Right. That's another fantasy land. That's not going to happen. Right. But I also think it's not a fair inference from this record that it was a tactical move not to raise this. It was Judge Balway who raised this issue. Yeah, it just didn't happen, sure. And so that's that. The only other thing, I think the court was on the right track with respect to the search incident to arrest. I mean, I think that's quite problematic, the way it happened in this case. But doesn't the case law really cut the other way? What the case law seems to say is these are the reasons we allow search incident to arrest, but we don't require that the government show in each circumstance that the police were subjectively concerned about it. They just get to do it. Yes, but except that when you remove it geographically from the place of arrest. So you do the search and then you arrest her at the DEA office somewhere else in the airport. So the order in time doesn't matter much, it seems like. But moving it matters. And the other thing is you're in the airport. Everybody has gone through TSA. So the notion that there's some weapons concern is completely bogus. The idea that there's some confederate that you would hand off the drugs to or toss the purse to or do something. It's going to be a destruction of evidence question, sure. Those are the rationales, but they don't make any sense in this factual context. Okay, thank you. Now before we quit, I understand that we're in federal court and you're the federal officers and you have no direct control over what the local police might do. But for me at least, the reason this is a close case is that the phrase you are free to leave is a radically incomplete instruction to a person standing in line at the airport. This would be an easy case for me if the officer had said you are free to leave and you are equally free to tell me to go away. That would make it an easy case for me. But because in fact on the facts of standing in line waiting to get on an airplane, no reasonable person is going to get out of line. This is a hard case for me. So if you want to talk to the folks out at the airport as to how to make it an easy case, that's how to do it. Absolutely. Okay. Thank you very much. The United States v. Kapa'a who submitted.
judges: Tashima, W. Fletcher, Hurwitz